# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**NACCO MATERIALS HANDLING GROUP, INC., for the benefit of YALE MATERIALS HANDLING CORPORATION**

    **Plaintiff,**

    v.

**RICARDO A. GONZALEZ PALMER, et al.**

    **Defendants.**

**Civil No. 10-1910 (GAG)**

## OPINION AND ORDER

Plaintiff in this matter, NACCO Materials Handling Group, Inc. ("NACCO"), brought this action against Ricardo A. Gonzalez Palmer and his wife Elvira Cordova Rodriguez ("Defendants") seeking payment of certain monies owed by Defendants in their capacity as joint and several guarantors of the debts and obligations of Supplies & Services, Inc. ("Supplies"). The court has subject matter jurisdiction over this contractual dispute pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Presently before the court are cross motions for summary judgment filed by NACCO (Docket No. 60) and Defendants (Docket No. 59). After reviewing the pleadings and pertinent law, the court **DENIES** Defendants' motion for summary judgment (Docket No. 59) and **GRANTS** in part and **DENIES** in part NACCO's motion for summary judgment (Docket No. 60).

**I.  Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.    Factual and Procedural Background**

NACCO is a manufacturer of forklift trucks and other material-handling equipments marketed under the YALE trademark. Supplies specializes in the sale, lease, and maintenance of material-handling equipment. In 1969, Supplies and Easton Yale & Towne International, Inc. ("Eaton") entered into an International Distributor Selling Agreement ("Distributor Agreement"). NACCO is the successor in interest to Eaton under the Distributor Agreement, which is still in effect and binding on both NACCO and Supplies. From the date of the Distributor Agreement onward, Supplies purchased Yale brand equipment.

In 2002, Supplies and NACCO entered into a Dealer Financing Floor Plan Agreement ("Floor Plan Agreement"). At this time, NACCO and Supplies also entered into a Yale Security Agreement dated November 6, 2002 (the "2002 Security Agreement"). From 2002 onward, NACCO

**Civil No. 10-1910 (GAG)**                                3

continued providing trade credit to Supplies on open account under the Distributer Agreement. While under the 2002 Security Agreement, Supplies granted NACCO a security interest in certain personal property owned by Supplies to secure its obligations to NACCO.

In 2006, Supplies defaulted on its monetary obligations under the Distributor Agreement. Supplies requested that NACCO forbear from exercising its rights and remedies under the Distributor Agreement. NACCO agreed and entered into a forbearance agreement (the "Forbearance Agreement")[1], a promissory note (the "Note"), and a second Yale security agreement (the "2007 Security Agreement"). All three of these documents were executed on February 13, 2007. As part of the forbearance transaction, NACCO requested a personal guaranty from the President and sole shareholder of Supplies, Ricardo Gonzalez-Palmer as well as his wife Elvira Cordova-Rodriguez ("Defendants"). Defendants agreed, and entered into a guaranty agreement (the "Guaranty Agreement") on February 13, 2007. Under the terms of the Guaranty Agreement, Defendants personally guaranteed, jointly and severally, the punctual payment of all obligations of Supplies to NACCO under: (i) the Forbearance Agreement; (ii) the 2007 Security Agreement; and (iii) the Note.

On January 28, 2011, NACCO filed an amended complaint (Docket No. 38) against Defendants demanding $161,788.03 as guaranty for the money owed by Defendants for Supplies' failure to keep current with its obligations under the various agreements. Defendants filed a motion to dismiss (Docket No. 9) these claims which the court denied (Docket No. 27). On June 30, 2011, Defendants and NACCO filed cross motions for summary judgment (Docket Nos. 59 & 60).

**III.    Discussion**

      **A.**     Defendants' summary judgment motion contains two main points of contention:

---

[1] Section 1 of the Forbearance Agreement provides that in the event of any further default under the Distributer Agreement or the 2002 Security Agreement, NACCO could elect to require payment under the Forbearance Agreement or exercise any other rights it may have under the Distributer Agreement or the 2002 Security Agreement. Section 5 states that any of the following constitutes a default under the Forbearance Agreement: (a) any default under the Distributor Agreement or the 2002 Security Agreement; (b) if Supplies fails to keep or perform any covenant or agreement contained in the Forbearance Agreement; ( c) if any representation or warranty of Supplies under the Forbearance Agreement is false, misleading, or incorrect in any material respect; (d) any event of default under the Forbearance Agreement.

(1) Supplies is an indispensable party to this action, and therefore, this suit cannot continue without its presence; and (2) even if Supplies is not an indispensable party, the maximum amount of Defendants' liability is $40,815.40 pursuant to Supplies' obligations under the Note.

As to Defendants' first argument, the court already held that Supplies is not an indispensable party to this litigation. On January 3, 2011, the court denied Defendants' motion (Docket No. 9) for dismissal on these grounds. In reaching its conclusion, the court recognized that "co-obligors generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract." In re Olympic Mills Corp., 477 F.3d 1, 10 (1st Cir. 2007). The court held that Supplies' interests would not be impaired by not being party to this litigation. Furthermore, the language of the Guaranty Agreement specifically states:

> The obligations of each Guarantor hereunder are independent of the Guaranteed Obligations or any other obligation of Debtor and are different from any obligations of any of the Guarantors, and a separate cause of action or actions may be brought and prosecuted against any Guarantor to enforce this Guaranty irrespective of whether the action is brought against Debtor (Supplies) or any other Guarantor . . . or whether the Debtor (Supplies) or any Guarantor is joined in any such action or actions.

(See Docket No. 67 at 3.) At summary judgment stage Defendants have not provided any new facts or law that convince this court otherwise. Accordingly, the court **DENIES** Defendants' motion for summary judgment on these grounds.

As to their second point of contention, Defendants aver that their obligations under the Guaranty Agreement do not extend to Supplies' financial obligations under the previously formed agreements (i.e. the Distributor Agreement and the Floor Plan Agreement). Therefore, if the court were to find that they have defaulted under the Guaranty Agreement the maximum amount of their liability is $40,815.40 (the amount due under the Note). However, the court disagrees with Defendants' interpretation of their obligations under the Guaranty Agreement. The Guaranty Agreement clearly encompasses both the Forbearance Agreement as well as the "full and timely performance and observance of all the covenants, terms or conditions of the Forbearance Agreement, the Security Agreement and the Note. . . ." (See Docket No. 61-7 at 1.) The clear language of the

**Civil No. 10-1910 (GAG)**                                5

Forbearance Agreement states that any default under the "Agreements" (defined in Recital A of the Forbearance Agreement as the Distributor Agreement and the Security Agreement) constitutes a default under the Forbearance Agreement. (See Docket No. 61-4 at 7.) Therefore, a default by Supplies under any of the abovementioned agreements would trigger Defendants' liability under the Guaranty Agreement.

NACCO alleges that Supplies has defaulted on its obligations under the Forbearance Agreement, which by extension triggers NACCO's rights under the Guaranty Agreement.[2] Among these alleged defaults, NACCO cites; (a) the remaining unpaid balance on two lift trucks sold by Supplies without remitting payment to NACCO; (b) unpaid principal and interest payments for the February 2009 - July 2010 period on debt acquired by Supplies prior to February 2007 for rental and floor plan equipment; (c) unpaid principal and interest payments for the July 2010 - December 2010 period for this rental and floor plan equipment; and (d) unpaid invoices for fleet rentals from rentals of lift trucks.[3] As a result of these alleged defaults, NACCO contends that Defendants personally owe a total of $161,788.03[4] under the Guaranty Agreement exclusive of attorney's fees and

---

[2] This right includes the right to "demand all costs and expenses of NACCO (including, without limitation, reasonable outside counsel fees and expenses) in connection with the enforcement . . . of this Guaranty. . . ."(See Docket No. 61-7 at 5.)

[3] NACCO alleges that each of these incidents of non-payment are defaults under Section 2 of the Floor Plan Agreement (see Docket No. 61-2 at 4-5) as well as Section 8 of the Distributor Agreement. (See Docket No. 61-1 at 2-3.) NACCO further alleges that the debt due on each of these alleged non-payments is also subject to the Forbearance Agreement, and thus are due immediately as payable as a result of Supplies' failure to comply with said agreement.

[4] NACCO calculates this sum using the following amounts. The unpaid interest payments for the period from February 2007 through July 2007 on debt acquired before February 2007 for rental and floor plan equipment and unpaid principal payments totals $69,844.02. $5,853.12 is owed for unpaid installments on rental equipment and interest on floor plan and rental equipment since July 2010. $40,815.14 is owed under the Note from two trucks sold by Supplies but unpaid. $45,275.75 is owed from various fleet rentals and is made up of unpaid invoices in the amounts of $3,009.22, $2,881.37, $2,881.37, $2,881.27, $2,882.27, $9,935.54, $6,197.10, $6,613.58, and $7,991.03.

**Civil No. 10-1910 (GAG)**                                        6

expenses.

Defendants argue that NACCO has failed to present any evidence to support its contention that Supplies has failed to make payments under any of the agreements included in the Forbearance Agreement. In its motion for summary judgment, NACCO argues that the alleged non-payments are defaults under Section 8 of the Distributor Agreement. (See Docket No. 62 at 18-20.) In response, Defendants argue that these incidents of alleged non-payment relate to rental and floor plan equipment, and fleet rentals, which Defendants contend is covered solely by the Floor Plan Agreement and thus not subject to the Forbearance Agreement. Defendants support their argument by highlighting that the Distributor Agreement is silent on issues of financing. (See Docket No. 65 at 9.) However, Defendants overlook the fact that the Forbearance Agreement also encompasses the 2002 Security Agreement which does contain terms regarding Supplies' financial obligations under the Distributor Agreement. Furthermore, Section 8 of the Distributor Agreement states in pertinent part:

> No notice shall be required to put the Distributor [(Supplies)] in default in respect of payments not made in accordance with specified terms. The Company [(NACCO)] may withhold performance of obligations to the Distributor until any such default is remedied, and shall have the right, at its option, to declare immediately due and payable the entire unpaid balance of any purchase price in respect of which a payment is in default.

(See Docket No. 62 at 19.) The court finds that this language grants NACCO the right, under the Distributor Agreement, to demand payment on Supplies' defaults on specified terms as established in future security contracts, such as the Floor Plan Agreement. Finally, as NACCO addressed in its reply (Docket No. 73), the Distributor Agreement is expressly referenced in the Floor Plan Agreement. Section 8.02(b) of the Floor Plan Agreement states "[i]n the event that Borrower breaches or does not comply with the terms and conditions of the Dealership Agreement, Creditor may treat such breach or noncompliance as a breach of or noncompliance with this Agreement." (See Docket No. 65-2 at 14.) Based on this language, it appears that the payment obligations owed under the Floor Plan Agreement are specific financial extensions of Supplies' obligations under the Distributor Agreement. Therefore, Supplies' alleged default on payments under the Floor Plan Agreement constitutes a default of the Distributor Agreement, which is specifically included under

the Forbearance Agreement, and thus, guaranteed by Defendants under the Guaranty Agreement.

In the alternative, Defendants argue that NACCO has failed to present sufficient evidence to establish the amount it owes in guaranty of Supplies' obligations.  The court agrees that NACCO has not provided sufficient evidence for the court to rule, as a matter of law, that Supplies has defaulted on its obligations in the amount of $161,788.03 under various agreements covered by the Guaranty Agreement.  However, based on the language of the contracts, the court does find that Defendants are personally liable, pursuant to the Guaranty Agreement, for any default by Supplies on its obligations under the Forbearance Agreement, the Distributor Agreement (which, by extension includes all agreements specifying financial terms associated with the obligations of the Distributor Agreement), the 2002 Security Agreement, the Note, and the 2007 Security Agreement.  Accordingly, the court **DENIES** Defendants' motion for summary judgment (Docket No. 59) and **GRANTS** in part and **DENIES** in part NACCO's motion for summary judgment (Docket No. 60).  The court enters partial summary judgment on the issue of the extent of Defendants' liability under the Guaranty Agreement.  Trial will be scheduled to determine the amount, if any, owed by Defendants under the Guaranty Agreement as interpreted by the court.

**SO ORDERED**.

In San Juan, Puerto Rico this 27th day of September, 2011.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge